# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

GREGORY D. PELFREY,

                Petitioner,          :    Case No. 3:19-cv-059

    - vs -                         District Judge Walter H. Rice
                                 Magistrate Judge Michael R. Merz

TIM BUCHANAN, Warden,
  Noble Correctional Institution

                          :
                Respondent.

# REPORT AND RECOMMENDATIONS

This is an action pursuant to 28 U.S.C. § 2254 for a writ of habeas corpus. It is referred to the undersigned under 28 U.S.C. § 636(b) for a report on dispositive matters under the Dayton General Order of Assignment and Reference, Day 13-01.

Pelfrey filed his Petition on February 26, 2019 (ECF No. 1). Upon initial review under Rule 4 of the Rules Governing § 2254 Cases, the Magistrate Judge ordered the State to respond (ECF No. 3). It has done so by filing the State Court Record (ECF No. 7) and a Return of Writ (ECF No. 8). Petitioner has now filed a Reply (ECF No. 11), making the case ripe for decision.

## Litigation History

Pelfrey was indicted by a Montgomery County, Ohio, grand jury on November 6, 2015, on two counts of theft and one count of forgery (Indictment, State Court Record, ECF No. 7, Ex. 1, PageID 185-86). On October 7, 2016, and November 16, 2016, he was separately indicted on two

counts of tampering with evidence. *Id.* at Exs. 3 and 5, PageID 188-89, 192-93. After trial to a jury, he was found guilty on all charges and sentenced to an aggregate term of imprisonment of thirteen years. He appealed and the Ohio Second District Court of Appeals affirmed. *State v. Pelfrey*, 2nd Dist. Montgomery No. 27474, 2018-Ohio-2427 (Jun. 22, 2018), appellate jurisdiction declined 153 Ohio St. 3d 1475, 2018-Ohio-3637 (2018).

Pelfrey filed a petition for post-conviction relief under Ohio Revised Code § 2953.21 (State Court Record, ECF No. 7, Ex. 30, PageID 503 *et seq.*). On May 18, 2018, the trial court granted the State summary judgment, *id.* at Ex. 34, PageID 576-87, and the record does not show Pelfrey appealed.

Pelfrey then filed an Application to Reopen his appeal under Ohio R. App. P. 26(B). *Id.* at Ex. 35, PageID 588 *et seq.* The Second District denied the application. *Id.* at Ex. 40, PageID 721-31. Pelfrey appealed to the Supreme Court of Ohio, but that court declined to exercise jurisdiction. *State v. Pelfrey*, 154 Ohio St. 3d 1482, 2019-Ohio-173.

Pelfrey then filed his Petition for Writ of Habeas Corpus in this Court on February 26, 2019 (ECF No. 1), pleading the following grounds for relief:

> **Ground One**: Prosecutorial misconduct in violation of Pelfrey's Sixth and Fourteenth Amendment rights by (1) failing to clear up any testimony that he knew to be incorrect or misleading, (2) failing to disclose evidence favorable to the accused, and (3) knowingly making improper statements.
>
> **Supporting Facts**:
>
> (1) The State violated Pelfrey's right to a fair trial under Fourteenth Amendment by failing to clear up any testimony that he knew to be incorrect or misleading.
>
> (2) The State violated the Due Process Clause of the Pelfrey's Fourteenth Amendment by failing to disclose evidence favorable to the accused.

(3) The State violated the Due Process Clause of the Pelfrey's Fourteenth Amendment by knowingly making improper statements during closing

**Ground Two:** The trial court erred in allowing parol evidence regarding the power of attorney in violation of the Due Process Clause of Pelfrey's Fourteenth Amendment.

**Ground Three:** Pelfrey's convictions were based on insufficient evidence in violation of the Due Process Clause of Pelfrey's Fifth Amendment for failing to prove beyond a reasonable doubt every element of the crimes with which Pelfrey was charged. The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt. *In re Winship*, 397 U.S. 358 [(1970)].

**Ground Four:** The trial court violated his right to a speedy trial in violation of Pelfrey's Sixth Amendment right under the IAD [Interstate Agreement on Detainers].

(Petition, ECF No. 1, PageID 25, 26, 31, 33 39, 43, 47) (emphasis removed).

# Analysis

**State Court Findings of Fact**

The Return of Writ commences with a Statement of Facts, copied from the Opinion of the Second District (ECF No. 8, PageID 1249-54), as follows:

### I. Background and Procedural History

{¶ 4} For approximately 48 years, Judith Daniel resided in a house on Connie Drive in Franklin, Ohio. Daniel and her husband purchased the home in 1967, the mortgage loan was paid off in 1983, the couple had raised their children there, and her husband died there in 2012. In March 2014, Daniel was 73 years old, and the home was in need of repair.

{¶ 5} National Title Company in Centerville, Ohio, closes loans for people when they buy and sell real property. National Title's owner,

Ray Woodie, also arranges loans for individuals through a network of private lenders; these loans usually involve situations where the borrower intended to "flip" the property, i.e., sell it again quickly. Woodie had previously arranged for private loans for Greg Dart, an acquaintance of Daniel's grandson, Pelfrey. In February 2014, Dart contacted Woodie, asking if Woodie could arrange for Pelfrey to obtain a private loan. Pelfrey told Woodie that he was going to fix up his grandmother's house. Woodie arranged for Pelfrey to obtain a $75,000 loan from Troy Pinkerton, a participant in Woodie's private network of lenders; Daniel's house would serve as security for the loan.

{¶ 6} On March 31, 2014, Pelfrey went to National Title to close on the private loan. When Pelfrey did not bring his grandmother to National Title and did not have a power of attorney for her, Woodie told Pelfrey that it was necessary to have Daniel's power of attorney to close on the loan.

{¶ 7} According to Daniel, that same day (March 31), Pelfrey approached her about signing a power of attorney. Pelfrey told Daniel that he had sold his business to Dart for $100,000, but that Dart was not going to pay the first $50,000; instead, Dart would fix Daniel's house. Pelfrey told Daniel that he needed her to sign a power of attorney so that he could authorize Dart to perform the work. Daniel testified that, on March 31, she picked up Pelfrey at his girlfriend's residence, and they drove to a bank where Daniel had a document notarized granting Pelfrey a power of attorney for that one day. Daniel was apprehensive about the power of attorney and called Pelfrey afterward to see if he had used it; Pelfrey told Daniel that he had not.

{¶ 8} On April 1, 2014, Woodie received a phone call from a man identifying himself as Pelfrey, asking Woodie to explain the transaction to his grandmother. Woodie spoke to the woman on the phone, and he believed he was talking to Daniel. At trial, Daniel denied that she had spoken with Woodie.

{¶ 9} Later that day (April 1), Pelfrey returned to National Title with the power of attorney. While there, Pelfrey, as attorney in fact for Daniel, closed on a one-year $75,000 loan from Pinkerton; neither Daniel nor Pinkerton was present. Under the terms of the promissory note, Daniel agreed to pay Pinkerton $991.13 for 12 months, followed by a balloon payment of $71,390.40 on April 1, 2015. The note was secured by a mortgage on Daniel's residence. Pelfrey received a check made payable to Daniel for $71,174 from National Title. (The check was not for the full $75,000 due to closing costs.)

Daniel testified that she never would have signed the power of attorney if she knew Pelfrey were going to obtain a mortgage loan and that she only signed the power of attorney because of his statement that it was needed for Dart to do repairs on her home.

{¶ 10} The power of attorney presented to Woodie and recorded with the Warren County Recorder's Office was dated and notarized on April 1, 2014. At trial, Daniel acknowledged that her initials and signature were on the document, but she said it looked different from the one she had signed. Daniel had previously told Detective Daniel Osterfeld of the Centerville Police Department that Pelfrey had approached her about the power of attorney on April 1, not March 31.

{¶ 11} The record does not reflect when the check to Daniel was cashed and how the check was spent, but no money was provided to Daniel. Daniel testified that Dart and Pelfrey came to her home a couple of times to discuss possible repairs. Daniel called Pelfrey the day after they had spoken about the repairs, and she told Pelfrey to stop the work on her house, because she did not think $50,000 would cover it. Daniel testified that somebody built a small deck on the front of her house (but did not finish it), and a little room was built in her garage; she thought that the builder worked for Dart. It is unclear when that work on her house occurred.

{¶ 12} On June 13, 2014, Daniel learned that the power of attorney had been used to secure a loan and that there was a lien on her house. Daniel also received correspondence from the Warren County Recorder's Office, which prompted her to call Pelfrey; Pelfrey came to Daniel's residence, took the correspondence, and said that he would take care of it. However, Daniel repeatedly received bills from Pinkerton that she was unable to pay.

{¶ 13} At some point, Daniel spoke with Detective Osterfeld about the power of attorney and the lien on her house. Osterfeld spoke with Pelfrey about the March 31/April 1 transaction in late November 2014.

{¶ 14} On April 29, 2015, Daniel executed a quit claim deed conveying her property, in lieu of foreclosure, to Pinkerton. Daniel vacated the residence in May 2015. Pinkerton testified that he performed approximately $25,000 in repairs on the property and that he had a contract to sell the property for $110,000.

{¶ 15} In May 2015, Pelfrey was residing in Miami, Florida. There, he met Ruken Oral and began a relationship with her; Pelfrey introduced himself as Ryan Owen.

{¶ 16} On November 6, 2015, Pelfrey was indicted for (1) theft from an elderly or disabled adult ($37,500 or more, but less than $150,000/ beyond scope of consent), in violation of R.C. 2913.02(A)(2) (Count 1); (2) forgery (uttering a forged power of attorney), in violation of R.C. 2913.31(A)(3) (Count 2); and (3) theft from an elderly or disabled adult ($37,500 or more, but less than $150,000/ deception), in violation of R.C. 2913.02(A)(3). Pelfrey was not immediately served with the indictment. The record reflects that, at this time, Pelfrey was incarcerated in Danville, Kentucky, on unrelated charges.

{¶ 17} In January 2016, Oral learned Pelfrey's actual name upon looking up Pelfrey's ex-wife, whose name Pelfrey had mentioned. When Oral confronted Pelfrey about his identity, Pelfrey became angry and told Oral not to trust anyone named Detective Osterfeld if the detective ever contacted her.

{¶ 19} On February 8, 2016, Pelfrey sent handwritten instructions to Oral, asking her to conduct research on Dart and for her to prepare an affidavit with specific averments that Pelfrey provided. Stated generally, the affidavit by Oral was to describe a sexual relationship between Oral and Dart, describe Dart as the person behind the power of attorney and the National Title loan, and indicate that Pelfrey was misled by Dart regarding the loan. Pelfrey asked Oral to mail three original copies back to him, noting, "This is very important to getting the charge dropped and released." Oral had an affidavit prepared, as instructed. The typed date on the affidavit was January 7, 2015, but it was notarized on February 25, 2016, in New Jersey, where Oral was then residing.

{¶ 19} On June 29 or 30, 2016, Pelfrey, while incarcerated in Kentucky, completed paperwork requesting that he be returned to Ohio to face the pending charges, pursuant to the Interstate Agreement on Detainers (IAD), codified in Ohio as R.C. 2963.30.1 On July 6, 2016, Pelfrey was served with the indictment in Danville, Kentucky, and returned to Ohio. Pelfrey appeared in Montgomery County, Ohio, for arraignment on July 12, 2016.

{¶ 20} By July 2016, Oral believed Pelfrey was being "disloyal" to her, and on July 6, 2016, Oral contacted Detective Osterfeld. Oral met with the detective on July 13, 2016, and provided him the handwritten instructions by Pelfrey (State's Exhibit 11) and the

typed and notarized affidavit she prepared (State's Exhibit 12). Oral testified that none of the statements in the affidavit was true. She stated that she did not know Dart when she prepared the affidavit.

{¶ 21} The trial court set a scheduling conference for July 26, 2016. Pelfrey's counsel moved for a continuance to gather additional discovery; the trial court reset the conference for August 9, 2016. (The document containing counsel's motion and the court's entry was filed on July 27.) At the August 9, 2016 conference, the trial court scheduled the final pretrial conference for October 4 and the trial for October 17, 2016, and Pelfrey's counsel requested a continuance until that time; the court granted the continuance. (A written motion for continuance and the court's entry granting the motion were filed on August 10, 2016.)

{¶ 22} In the late summer of 2016, while Pelfrey was in the Montgomery County Jail, Pelfrey became acquainted with Katrina Bercot, who spoke with him and visited him at the jail. Bercot's testimony is somewhat unclear, but it appears that her boyfriend was incarcerated with Pelfrey at the Montgomery County Jail and that her boyfriend "got [her] started" with helping Pelfrey.

{¶ 23} In September 2016, Bercot received handwritten instructions from Pelfrey. The instructions told Bercot to type up a handwritten agreement that he was providing, print it, photocopy the agreement with signatures that he was providing, destroy the signatures, and mail three copies back to Pelfrey. Pelfrey also had a series of phone calls with Bercot (which were recorded by the jail), where they talked about having Bercot type up a document, put signatures on it, and deliver it to Pelfrey's attorney. The agreement stated, in its entirety:

> I Greg Dart agree to complete the renovation and remodel at 3523 Connie St, Franklin, oh 45005. Pay any outstanding balance owed to any contractor, for work completed to date, and repay the $3,000.00 I borrowed from you, for the 4pts to generate the loan against your Grandmas house from the proceeds at closing.
>
> The renovation and remodel will be completed no later than September 1, 2014 at which time I will pay the loan off, and complete the purchase of Go reclaimed.
>
> In exchange, I expect the proceeds from the loan to be signed over and endorsed to [I]ntrigue Property Management, So I can Handle the dispensing of any and

all funds for record purposes, full access and rights to go reclaimed, LLC including but not limited to any unsold reclaimed material and inventory, Barns needing to be Dismantled, customer and vender contracts, Tools owned by the company, and any phone number, email, or Domain associated with business.

This agreement will be considered Valid and Binding upon both parties agreeing to the terms Herein and signing and Dating below.

(Grammatical, punctuation, and capitalization errors sic.) The typed agreement appeared to be signed by two individuals, Pelfrey and presumably Dart (illegible), on April 1, 2014. Bercot later provided the handwritten instructions (State's Exhibit 7), the handwritten agreement (State's Exhibit 8), and the typed agreement (State's Exhibit 9) to the police.

**{¶ 24}** Bercot testified that she also sent text messages to an individual on Pelfrey's behalf, as instructed by Pelfrey. The messages told the recipient not to lie about his (the recipient's) involvement in the loan, his presence at the closing on April 1, and about being with Pelfrey when the check was cashed. The messages show "Greg" (presumably Dart) as the recipient, but Bercot did not know whom she had texted. (*See* State's Exhibit 13.) Bercot testified that she visited Pelfrey in jail and got the exact wording and phone number for the messages from Pelfrey.

**{¶ 25}** The office of Pelfrey's attorney received a copy of the purported April 1, 2014 agreement between Pelfrey and Dart, and it was relayed to Pelfrey's attorney. On October 7, 2016, Pelfrey's counsel provided the prosecutor a copy of the purported April 1, 2014 agreement as part of counsel's reciprocal discovery in this case.

**{¶ 26}** The same day (October 7), Pelfrey was indicted for tampering with evidence, in violation of R.C. 2921.12(A)(2), based on his conduct regarding the affidavit in February 2016 (B Indictment).

**{¶ 27}** Pelfrey appeared for his arraignment on the new tampering with evidence charge on October 18, 2016. At that time, the prosecutor stated that "we have a new trial date" of December 12, 2016, for both cases. The prosecutor noted that Pelfrey's speedy trial time on the initial charges was running under the IAD, and the December date met those requirements. On the same date, the prosecutor informed Pelfrey's attorney that additional discovery would be forthcoming that might implicate Pelfrey with another

additional criminal charge. Later that month, Pelfrey's counsel received information that the April 2014 agreement may have been fabricated.

{¶ 28} On November 16, 2016, Pelfrey was indicted for tampering with evidence, in violation of R.C. 2921.12(A)(2), based on his conduct between September 1, 2016 and October 14, 2016 related to the purported April 1, 2014 agreement (C Indictment). Pelfrey's counsel moved to withdraw as counsel the same day.

*Pelfrey*, 2018-Ohio-2427.

As Respondent points out, state court factual findings are to be presumed by a habeas court to be correct unless they are rebutted "by clear and convincing evidence." (Return, ECF No. 8, PageID 1249, n.1, citing 28 U.S.C. § 2254(e)(1)). Moreover, fact-based habeas relief can be granted on a claim adjudicated on the merits in state court only if the petitioner demonstrates that the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(2).

Apparently, Petitioner wants to satisfy one or the other of these two requirements by contesting the Second District's findings. Petitioner begins his Reply with thirteen pages of response to the Statement of Facts in the Return quoted above from the Second District's decision (Reply, ECF No. 11, PageID 1293-1305). He labels this section of the Reply as "Statement of Facts in light of the other documentary evidence *not* in the record of the trial." *Id.* at PageID 1293. He then proceeds to quote paragraphs of the Second District's Opinion but to modify them in accordance with what he believes the evidence shows. For example, paragraph six of *State v. Pelfrey*, 2018-Ohio-2427 of the Opinion reads:

{¶ 6} On March 31, 2014, Pelfrey went to National Title to close on the private loan. When Pelfrey did not bring his grandmother to National Title and did not have a power of attorney for her, Woodie

told Pelfrey that it was necessary to have Daniel's power of attorney to close on the loan.

Pelfrey asserts that the correct statement should read:

> [*P6] On March 31, 2014 ["at 5:00[pm]"], Pelfrey went to National Title to close on the private loan. When Pelfrey did not bring his grandmother to National Title and did not have a power of attorney for her. [At which time,] Woodie ["mentioned to [Pelfrey] on the 31st the need for a power of attorney." (PAGEID # 937).]

> [That same day (March 31)], "Pelfrey informed [Daniel] that he would be needing her to complete a power of attorney agreement for one day" (PAGEID # 407) "for purposes of borrowing money." (PAGEID # 405).

(Reply, ECF No. 11, PageID 1293.)

The PageID references Pelfrey has incorporated in his revisions of the Court of Appeals Opinion are apparently to places in the State Court Record where he believes the inserted matter is proved. For example, at PageID 937, State's witness Ray Woodie, the closing agent for the loan in suit, testified that he believed that Pelfrey came into his office at 5:00 p.m. on March 31, 2014, and that he mentioned to Pelfrey at that time the need for a power of attorney (Trial Tr., ECF No. 7-3, PageID 937). However, what appears PageID 405 is not any testimony, but an unsigned page of a June 24, 2014, letter from the law firm of Ruppert, Bronson & Ruppert Co., L.P.A., to Pelfrey making demands on behalf of his grandmother Judith F. Daniel, the victim in this case. The page is marked as Appendix E to Pelfrey's Memorandum in Support of Jurisdiction in the Supreme Court of Ohio filed July 16, 2018 (State Court Record, ECF No. 7, Ex. 26, PageID 351 *et seq.*), and bears the handwritten words: "Where in this letter does it allege the power of attorney had been 'altered' or that Pelfrey did not have authority to mortgage Daniel's property? It doesn't!"[1]

---

[1] The Magistrate Judge presumes from the context that the handwritten words were added by Pelfrey.

*Id.* at PageID 405. PageID 407 consists of a page from a set of investigative notes of the Centerville, Ohio, Police Department with virtually the entire text redacted; the Magistrate Judge has no indication who made the redactions, but they appear to have been done by hand. This section of the Reply continues to offer amended paragraphs of the Second District's opinion through paragraph sixteen (ECF No. 11, PageID 1293-96), after which Pelfrey switches to an extended argument about the alleged misconduct of Assistant Montgomery County Prosecuting Attorney Kraig Chadrick ("APA Chadrick"), including several instances of proclaiming his actual innocence. Id. at PageID 1296-1304.

Pelfrey's method of attacking the Second District's findings of fact is completely unpersuasive. If there are particular findings which he believes are not supported by the evidence, he is welcome in any objections he files to this Report to note those findings, assembling (with PageID references) the evidence he believes is to the contrary. But, for example, the Second District's omission of 5:00 p.m. from its findings in paragraph six does not render that paragraph erroneous. Any references to evidence must be to evidence that was of record in the state courts. Pelfrey has neither requested nor received permission to expand the record beyond that

**Ground One:  Prosecutorial Misconduct**

In his First Ground for Relief, Pelfrey claims his trial was unfair because of three acts of misconduct by APA Chadrick:  (1) failing to "clear up" testimony he knew to be incorrect or misleading; (2) failure to disclosed exculpatory evidence; and (3) knowingly making improper comments during closing argument (Petition, ECF No. 1, PageID 25).

Respondent asserts merits consideration of Ground One is barred by Pelfrey's procedural

default of "failing to present it to the Ohio Court of Appeals on direct appeal." (Return of Writ, ECF No. 8, PageID 1269).

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). "Absent cause and prejudice, 'a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.'" *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000), quoting *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

> [A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S. Ct. 612, 175 L. Ed. 2d 417 (2009). This is an important "corollary" to the exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124 S. Ct. 1847, 158 L. Ed. 2d 659 (2004). "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Coleman*, 501 U.S., at 731-732, 111 S. Ct. 2546, 115 L. Ed. 2d 640. The procedural default doctrine thus advances the same comity, finality,

> and federalism interests advanced by the exhaustion doctrine. See *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).

*Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Barton v. Warden, S. Ohio Corr. Facility,* 786 F.3d 450, 464 (6th Cir. 2015), *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010) (en banc); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction. *See County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979). . . .
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d at 138 (6th Cir. 1986); accord *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002). A habeas petitioner can overcome a procedural default by showing cause for the default and prejudice from the asserted error. *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015).

Pelfrey first argues that the state courts did not enforce a state procedural rule in denying him relief (Reply, ECF No. 11, PageID 1309). "A claim may become procedurally defaulted in two ways." *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013), quoting *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). "First, a claim is procedurally defaulted where state-court remedies have been exhausted within the meaning of § 2254, but where the last reasoned state-court judgment declines to reach the merits because of a petitioner's failure to comply with a state procedural rule." *Id.* "Second, a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule." *Id.* Pelfrey cites *Lovins* (Reply, ECF No. 11, PageID 1309, citing 712 F.3d at 297), but fails to acknowledge the second manner of default: failure to present the claim at all. Pelfrey admits he did not present any prosecutorial misconduct claim on direct appeal, but blames it on his appellate counsel's ineffectiveness. But the claim is defaulted in the second sense: there is now no forum in which to present that claim as on direct appeal and any attempt to do so would be met by Ohio's rule forbidding a second direct appeal.

Pelfrey also asserts that this default is excused by the ineffective assistance of appellate counsel in refusing to include this claim (Reply, ECF No. 11, PageID 1305).

Ineffective assistance of counsel can provide cause to excuse a procedural default. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). However, before it can be counted as excusing cause, the ineffectiveness claim must itself be presented to the state courts in the manner required by law. *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000), quoting *Carrier*, 477 U.S. at 489. In Ohio, that must be by filing an application for reopening the direct appeal under Ohio R. App. P. 26(B). Pelfrey filed such an application which the Second District considered on the merits but rejected. *State v. Pelfrey*, No. 27474 (2nd Dist. Sep. 19, 2018) (unreported; copy at State Court Record, ECF

No. 7, Ex. 40, PageID 721-31).  The appellate decision on this question reads:

## A. Prosecutorial Misconduct

First, Pelfrey claims that his appellate counsel should have argued that the State engaged in prosecutorial misconduct by eliciting two false statements from Judith Daniel, the complainant, during her testimony and by making nine false statements to the jury. Specifically, Pelfrey notes that Daniel testified that she executed a power of attorney on March 31, 2014, and that the document presented at trial did not look familiar to her; Pelfrey asserts that the prosecutor knew that the power of attorney was actually signed on April 1, 2014, as reflected on the document. Pelfrey further claims that the prosecutor knowingly engaged in misconduct by stating to the jury during closing argument that the power of attorney had been altered and that Pelfrey had promised his grandmother that the power of attorney would only be used for repairs to her home.

The test for prosecutorial misconduct is whether the prosecutor's actions or remarks were improper, and if so, whether they prejudicially affected the accused's substantial rights. *State v. Smith,* 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). The touchstone of the analysis "is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips,* 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). The question is whether the prosecutor's misconduct so infected the accused's trial with unfairness that the accused's convictions came in violation of the right to due process. *Donnelly v. DeChristoforo,* 416 U.S. 637, 644, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974).

We find no reasonable probability that Pelfrey would have prevailed on a claim of prosecutorial misconduct had it been raised on appeal. There is nothing in the record to suggest that Daniel knowingly made false statements under oath when she testified that she executed a power of attorney on March 31, 2014 (rather than April 1, 2014), and that the power of attorney that was recorded and presented at trial appeared different from the one she had signed. We cannot conclude that Daniel's testimony was perjured simply because there was evidence from which the jury could have concluded that Daniel was mistaken in her testimony and that the power of attorney was not, in fact, altered.

In addition, we find no reasonable probability that Pelfrey would have prevailed regarding the prosecutor's statements during closing argument. In general, prosecutors enjoy a wide degree of latitude

during closing arguments. *State v. Whitfield,* 2d Dist Montgomery No. 22432, 2009-Ohio-293,¶12. They may freely address what the evidence has shown and what reasonable inferences may be drawn from that evidence. *State v. Lott,* 51 Ohio St3d 160, 165, 555 N.E.2d 293 (1990); *State v. Black,* 181 Ohio App.3d 821, 2009-Ohio-1629, 911 N.E.2d 309, 'II 33 (2d Dist.). In Pelfrey's case, the prosecutor did not engage in misconduct when he argued that Daniel's testimony, which was properly admitted at trial, supported the indicted charges, even when there was additional evidence that arguably refuted the prosecutor's version of the events.

*Id.* at PageID 724-26.

Pelfrey argues this decision of the Second District "was an unreasonable determination of the facts in light of the 'other documentary evidence in support of the claim for relief' *not* presented at trial." (Reply, ECF No. 11, PageID 1307 (emphasis in original)). Essentially Pelfrey is asking this Court to find the Second District was in error on the basis of evidence that was not before it. But this exceeds the scope of our authority in habeas corpus. 28 U.S.C. § 2254(d)(2) requires us to defer to the state court unless its determination was objectively unreasonable "in light of the evidence presented in the state court proceeding." The Supreme Court has expressly forbidden habeas courts to make their decision on this question on the basis of evidence not presented to the state courts. *Cullen v. Pinholster*, 563 U.S. 170 (2011).

On the basis of the evidence in the state court record, the Second District's decision was completely reasonable. To be sure, there are inconsistencies in the evidence, as the Second District recognized. But a prosecutor does not commit misconduct when he permits a jury to consider inconsistent evidence and make up its own collective mind about whether there is proof of guilt beyond a reasonable doubt. Juries are routinely instructed that there are likely to be inconsistencies between the testimonies of various witnesses because of failures of perception or memory:

Inconsistencies or discrepancies in the testimony of a witness or between the testimony of different witnesses may or may not cause you to disbelieve or discredit such testimony. Two or more persons

16

witnessing an incident or a transaction may simply see or hear it differently. Innocent misrecollection, like failure of recollection, is not an uncommon human experience. In weighing the effect of a discrepancy, however, always consider whether it pertains to a matter of importance or an insignificant detail and consider whether the discrepancy results from innocent error or from intentional falsehood.

O'Malley, Grenig & Lee, Fed. Jury Prac. & Instr., § 15.01 (6th ed.)

In his Reply, Pelfrey notes that the Second District did not, in its original decision on the 26(B) application, expressly consider his claim that the prosecutor committed misconduct by failing to disclose a second statement by Daniel that would have been disclosable under *Brady v. Maryland*, 373 U.S. 83 (1963) (Reply, ECF No. 11, PageID 1308).  He called that omission to the attention of the Second District in an untimely motion for reconsideration.  *Id.*  Denying reconsideration, the Second District concluded "[w]e thoroughly addressed his proposed prosecutorial misconduct arguments, and we find no basis to reconsider them."  *State v. Pelfrey*, No. 27474 (2nd Dist. Nov. 2, 2018) (unreported; copy at State Court Record, Ex. 42, ECF No. 7, PageID 743).

Pelfrey has not shown this decision of the Second District was contrary to or an objectively unreasonable application of United States Supreme Court precedent, because he has not shown his appellate attorney was aware of the existence of the supposed *Brady* material.  In fact, he has not even shown that such a statement actually exists.  As Respondent notes, he merely speculates on its existence from the bill of particulars.

Finally, Pelfrey claims failure to decide his prosecutorial misconduct claims on the merits will result in a miscarriage of justice.  The "miscarriage of justice" standard, which is sometimes used synonymously with "actual innocence," requires some showing of actual innocence.  In other words, they are the same standard, not alternative ways of avoiding a procedural default.  *Dretke*

*v. Haley*, 541 U.S. 386, 393 (2004); *Calderon v. Thompson,* 523 U.S. 538 (1998). Pelfrey has made no showing of actual innocence in the manner required by the Supreme Court in *Schlup v. Delo,* 513 U.S. 298, 316 (1995). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324.

Pelfrey presents page after page of quotations from case law about how abhorrent it is for a prosecutor to suborn perjury. This Court agrees wholeheartedly. But from what Pelfrey has presented, the Court finds the determination of the Second District that that is not what the prosecutor here did to be an objectively reasonable determination based on the evidence before it. Therefore, Pelfrey's failure to present this claim on direct appeal procedurally defaulted the claim and the default is not excused by ineffective assistance of appellate counsel or actual innocence. Pelfrey's First Ground for Relief should be dismissed.

**Ground Two: Allowance of Parol Evidence**

In his Second Ground for Relief, Pelfrey claims the trial court violated his due process rights under the Fourteenth Amendment by admitting parol evidence about the power of attorney that Daniels gave Pelfrey.

Respondent asserts this claim is barred by procedural default as it was not fairly presented to the Second District Court of Appeals as a constitutional issue, but rather as a claim of abuse of discretion. Pelfrey responds merely that it was presented on direct appeal, citing his appellate brief (Reply, ECF No. 11, PageID 1322).

To preserve a federal constitutional claim for presentation in habeas corpus, the claim must be "fairly presented" to the state courts in a way which provides them with an opportunity to remedy the asserted constitutional violation, including presenting both the legal and factual basis of the claim. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993), overruled in part on other grounds by *Thompson v. Keohane,* 516 U.S. 99 (1995); *Riggins v. McMackin,* 935 F.2d 790, 792 (6th Cir. 1991).

Merely using "talismanic phrases" like "fair trial" or "due process of law" does not constitute raising a federal constitutional issue. *Slaughter v. Parker,* 450 F.3d 224, 236, 252 (6th Cir. 2006); *Franklin v. Rose,* 811 F.2d 322, 326 (6th Cir. 1987); *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000), citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2nd Cir. 1984). Mere use of the words "due process and a fair trial by an impartial jury" are insufficient. *Id*. at 236; accord *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004). "A lawyer need not develop a constitutional argument at length, but he must make one; the words 'due process' are not an argument." *Riggins v. McGinnis*, 50 F.3d 492, 494 (7th Cir. 1995).

If a petitioner's claims in federal habeas "rest on different theories than those presented to the state courts," they are procedurally defaulted. *Lorraine v. Coyle*, 291 F.3d 416, 425 (6th Cir. 2002), *citing Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); accord *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Lott v. Coyle*, 261 F.3d 594, 607, 619 (6th Cir. 2001) ("relatedness" of issues will not save a procedurally defaulted claim).

The parol evidence claim was Pelfrey's Fifth Assignment of Error on direct appeal. (Appellant's Brief, State Court Record, ECF No. 7, PageID 281-82.) There is no mention at all of the United States Constitution or any federal case law. The Second District certainly did not understand it was deciding a federal constitutional claim when it decided the parol evidence

assignment. *State v. Pelfrey*, 2018-Ohio-2427, at ¶¶ 81-85. Instead, it applied Ohio case law and noted that the parol evidence rule does not preclude evidence of fraud in the inducement. *Id*. at ¶ 83.

There is a more fundamental problem with Pelfrey's Second Ground for Relief: it fails to state a claim upon which habeas corpus relief can be granted. Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010) (per curiam)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Barclay v. Florida,* 463 U.S. 939 (1983); *Smith v. Phillips*, 455 U.S. 209, 221 (1982). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 159-60 (1825) (Marshall C.J.); *Bickham v. Winn*, 888 F.3d 248, 253 (6th Cir. 2018) (Thapar, J. concurring).

There is simply no United States Supreme Court decision constitutionalizing the parol evidence rule. Of course, the parol evidence rule is well established in Ohio and most common law jurisdictions, but failure to abide by state law is not itself a constitutional violation. *Roberts v. City of Troy*, 773 F.2d 720, 726 (6th Cir. 1985), citing *Davis v. Scherer*, 468 U.S. 183, 194 (1984). Violation by a State of its own procedural rules does not by itself constitute a violation of due process. *Bates v. Sponberg*, 547 F.2d 325 (6th Cir. 1976); *Ryan v. Aurora City Bd. of Educ.*, 540 F.2d 222, 228 (6th Cir. 1976). "A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable." *Levine v. Torvik*, 986 F.2d at 1515 (6th Cir. 1993).

Because Ground Two does not raise a constitutional claim and is procedurally defaulted, it

should be dismissed.

**Ground Three:  Convictions Based on Insufficient Evidence**

In his Third Ground for Relief, Pelfrey asserts his convictions are based on insufficient evidence.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990) (en banc).  In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt.  *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . .  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, No. 3:03-po-2, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007) (Rice, J.).  This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991).  Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt.  *In re Winship*, 397 U.S. at 364.

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after

enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110

Stat. 1214) (the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus

case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to

the appellate court's consideration of that verdict, as commanded by AEDPA. *Parker v. Matthews*,

567 U.S. 37, 43 (2012) (per curiam); *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *Davis v.

Lafler,* 658 F.3d 525, 531 (6th Cir. 2011) (en banc).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, ___, 132 S.Ct. 2, 181 L.Ed.2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge

simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U.S. ___, ___, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012) (per curiam); *Parker v. Matthews*, 567 U.S. at 43.

Pelfrey submitted an insufficiency of the evidence claim, combined with a manifest weight claim, to the Second District on direct appeal. That court decided the issue as follows:

### II. Sufficiency and Manifest Weight of the Evidence

{¶ 36} In his third assignment of error, Pelfrey claims that his convictions were based on insufficient evidence and against the manifest weight of the evidence.

{¶ 37} A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to sustain the verdict as a matter of law. *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997- Ohio 52, 678 N.E.2d 541 (1997). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 38} In contrast, "a weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *Wilson* at ¶ 12; *see Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19 ("'manifest weight of the evidence' refers to a greater amount of credible evidence and relates to persuasion"). When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 20 Ohio B. 215, 485 N.E.2d 717 (1st Dist.1983).

{¶ **39**} Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 Ohio App. LEXIS 3709, 1997 WL 476684 (Aug. 22, 1997). The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

{¶ **40**} In reviewing challenges based on the sufficiency and/or manifest weight of the evidence, we consider the evidence admitted at trial. This includes evidence that was admitted erroneously. *State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, 903 N.E.2d 284; *State v. Rosales*, 2d Dist. Montgomery No. 27117, 2018-Ohio-197, ¶ 16, citing *State v. Johnson*, 2015-Ohio-5491, 55 N.E.3d 648, ¶ 95 (2d Dist.). And, we cannot consider evidence that was excluded by the trial court.

{¶ **41**} Pelfrey makes a general argument that his convictions were based on insufficient evidence and against the manifest weight of the evidence, because several of the State's witnesses were not credible. Pelfrey states in his appellate brief:

> The victim in this case, Judy Daniel, is an elderly woman whose testimony regarding important dates conflicted with the statements she made to the investigating detective, Detective Osterfeld of the Centerville Police Department. State's witness Ray Woodie, who was from National Title, processed the closing for the note and mortgage, and testified that at the prompting of Detective Osterfeld, he prepared a scrivener's affidavit that the dates he originally inserted in the closing documents were incorrect. State's witnesses Karina Bercot and Ruken Oral testified that they were granted immunity from prosecution in exchange for their testimony. Witness Oral denied writing a key document, which the Defendant's expert witness would have testified, if permitted, that said document matched the written statement she provided to the Centerville Police Department. The exclusion of Defendant's expert witness and reports adversely affected his ability to present a defense as to that charge.

{¶ **42**} In reaching its verdict, the jury was free to believe all, part, or none of the testimony of each witness and to draw reasonable inferences from the evidence presented. *State v. Baker*, 2d Dist. Montgomery No. 25828, 2014-Ohio-3163, ¶ 28. It was the province of the jury to weigh the evidence and determine whether the State had proven, beyond a reasonable doubt, that Pelfrey had committed theft, forgery, and tampering with evidence. *State v. Ball*, 2d Dist. Clark No. 2017-CA-54, 2018-Ohio-605, ¶ 27.

{¶ **43**} In the State's original indictment, the State charged Pelfrey with knowingly uttering a forged power of attorney knowing that he was facilitating a fraud; it asserted that the power of attorney used by him contained dates that he changed from the original power of attorney signed by Daniel. (*See* Bill of Particulars, filed Jan. 26, 2017.) The State further charged Pelfrey with theft of Daniel's home equity and ownership interest in her home by (1) exceeding the scope of any consent given by Daniel and (2) misleading Daniel regarding the use of the power and using a fraudulent power of attorney beyond the scope authorized by Daniel and after it had been revoked. The B and C Indictments charged Pelfrey with tampering with evidence based on his causing two false documents -- Oral's affidavit and the April 1, 2017 agreement — to be made.

{¶ **44**} At trial, the State's witnesses and exhibits, if believed, provided sufficient evidence to convict Pelfrey of each of the charged offenses. While Pelfrey argues that the jury should not have credited some of the witnesses' testimony, "witness credibility is not a proper matter on review of the sufficiency of the evidence." *State v. Wilks*, 2018-Ohio-1562, ___ N.E.3d ___, ¶ 162.

{¶ **45**} Through cross-examination, defense counsel challenged various aspects of the State's case, and there was some evidence that Daniel signed the power of attorney on April 1 after talking with Woodie. As a result, the jury could have reasonably concluded that Daniel was mistaken at trial when she testified that she signed the power of attorney on March 31, 2014. In addition, there was evidence from which the jury could have concluded that Pelfrey intended to use the funds to repair Daniel's home and that he had begun those repairs. Nevertheless, the jury heard the conflicting evidence and was tasked with determining each witness's credibility. Upon review of the entire transcript, we cannot conclude that the jury lost its way when it credited the State's version of events and found Pelfrey guilty as charged.

{¶ **46**} Pelfrey's third assignment of error is overruled.

*Pelfrey*, 2018-Ohio-2427.

Although Respondent argues this claim also is procedurally defaulted, the Magistrate Judge concludes that in dealing with this assignment of error, the Second District dealt on the merits with Pelfrey's claim that there was insufficient evidence to support any of his convictions.

Nevertheless on the merits Pelfrey fails to persuade the Court that the Second District's decision was an objectively unreasonable application of *Jackson v. Virginia*. Essentially his argument here is a variation on his suborning perjury argument in Ground One. He emphasizes that the Second District found there was evidence from which "the jury could have reasonably concluded that Daniel was mistaken at trial when she testified that she signed the power of attorney on March 31, 2014." *Pelfrey*, 2018-Ohio-2427, at ¶ 45. Pelfrey quotes this paragraph with the word "mistaken" in all capitals and bold-faced (Reply, ECF No. 11, PageID 1333). But the fact that a jury could have found in Pelfrey's favor does not mean it was bound to do so. In other words, possibly mistaken testimony does not automatically create reasonable doubt to the level that a jury verdict must be overturned.

Pelfrey's Third Ground for Relief should be dismissed.


**Ground Four: Denial of Speedy Trial**


In his Fourth Ground for Relief, Pelfrey claims he was denied his right to a speedy trial which is guaranteed by the Sixth and Fourteenth Amendments "under the IAD." (Petition, ECF No. 1, PageID 47).

Respondent asserts this claim is procedurally defaulted because he presented his speedy trial claim on direct appeal solely as a claim under Ohio Revised Code § 2945.71 (Return, ECF

No. 8, PageID 1285). Pelfrey admits that the first time this claim was raised in the Ohio courts was on his application for reopening under Ohio R. App. P. 26(B), when he presented this as a claim that he received ineffective assistance of appellate counsel (Reply, ECF No. 11, PageID 1334).

The Second District's decision on this portion of the 26(B) Application reads:

### B. Speedy Trial Rights under the Interstate Agreement on Detainers (IAD)

Second, Pelfrey claims his appellate counsel rendered ineffective assistance by failing to raise that his right to a speedy trial under the IAD was violated.

"The IAD outlines two procedures by which a prisoner against whom a detainer has been lodged may be transferred to the temporary custody of another state for disposition of charges pending there. 'One of these procedures may be invoked by the prisoner; the other by the prosecuting attorney of the receiving State.'" *State v. Black*, 142 Ohio St.3d 332, 2015-Ohio-513, 30 N.E.3d 918, ¶ 8, quoting *Cuyler v. Adams*, 449 U.S. 433, 444, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981).

Under Article III of the IAD, a prisoner may initiate his transfer to another state in which charges are pending by "caus[ing] to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment." R.C. 2963.30, Art. III(a).

Once a prisoner has satisfied his or her obligations under the IAD, he or she must be brought to trial within 180 days. Id.; *see also State v. Maurey*, 64 Ohio St.3d 482, 487-488, 597 N.E.2d 101 (1992), paragraph one of the syllabus. However, "for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance" of the 180-daytime-period. R.C. 2963.30, Art. III(a). When the IAD is invoked, its speedy-trial time periods apply rather than those in Ohio's speedy trial statute, R.C. 2945. 71. *State v. Reece*, 2d Dist. Montgomery No. 27081, 2017-Ohio-222 ¶ 9.

Pelfrey, while incarcerated in Kentucky, submitted paperwork under the IAD in June 2016 and was transferred to Montgomery County pursuant to the IAD to stand trial on theft and forgery charges, the original charges in this case. Pelfrey was subsequently indicted on tampering with evidence charges, which were not governed by the IAD.

On appeal, Pelfrey's fourth assignment of error claimed that the trial court violated his right to a speedy trial under R.C. 2945.71, Ohio's speedy trial statute. The assignment of error and supporting argument did not mention the IAD or discuss its requirements. Because Pelfrey was transferred to Ohio under the IAD, appellate counsel's failure to raise a speedy trial argument under the IAD may fall below an objective standard of reasonableness. Nevertheless, such action constitutes ineffective assistance of appellate counsel only if there is a reasonable probability that Pelfrey would have prevailed on that argument.

The parties now seem to agree that State was required to try Pelfrey by December 27, 2016, absent the tolling of any time. [footnote omitted] Pelfrey was brought to trial on January 30, 2017 - 34 days after December 27, 2016.

It appears undisputed that Pelfrey's speedy trial time ran from June 30 until July 25, 2016. On July 26, 2016, defense counsel requested a continuance of the scheduling conference, and the trial court reset the scheduling conference for August 9, 2016; it is unclear from the written transcript if defense counsel's request was made in open court.

The scheduling conference was held on August 9, 2016, during which the trial court scheduled a final pretrial conference on October 4, 2016, and set a trial date of October 17, 2016. The following exchange then occurred:

THE COURT: * * * I understand that Defendant is moving for a continuance until that time.

[DEFENSE COUNSEL]: To that time to the trial date. Yes, sir.

THE COURT: All right. Very well. We'll ***grant that continuance until that time at Defendant's request.

Pelfrey asserted in his motion to dismiss before the trial court and asserts again now in his application for reopening that the continuance from August 9, 2016 to October 17, 2016 should not

count against him for speedy trial purposes, because there was no need for the continuance and nothing was, in fact, continued. It is not apparent why defense counsel asked for the continuance until October 17, 2016. It is possible that the trial court would have scheduled an earlier trial date but for defense counsel's request, but there is nothing in the record to explain why the request was made. Nevertheless, even if the speedy trial time were not tolled for this period, we would find that Pelfrey was brought to trial within the speedy trial deadline.

Of primary significance, on November 29, 2016, within the IAD's speedy trial deadline, Pelfrey waived his speedy trial time under the IAD. On November 29, Pelfrey was arraigned on the C Indictment in his case (the second tampering with evidence charge), and his new attorney informed the court that he had a conflict for the scheduled December 12 trial date. Pelfrey acknowledged, in open court, that the waiver would apply to all three indictments. Pelfrey also executed a written time-waiver listing all counts against him, but that waiver did not mention the IAD. The trial court set a new trial date of March 6, 2017.

On December 13, 2016, Pelfrey's counsel informed the trial court that Pelfrey would not sign a revised written speedy trial waiver to include the IAD. Defense counsel also indicated that, although Pelfrey would not agree to a continuance, he (counsel) needed additional time to prepare for trial. Believing that no valid waiver had been made on November 29, the trial court set a revised trial date of January 30, 2017, which the trial court and State believed was within the 180-day speedy trial time due to the August 9 to October 17 continuance.

Although the written waiver on November 29, 2016 did not address the IAD, Pelfrey's oral waiver of his speedy trial rights on that date was effective under the IAD. The IAD requires that time waivers be made on the record in open court; that was done There is no requirement in the IAD that the waiver also be in writing to be effective. *Accord State v. King*, 70 Ohio St.3d 158, 160, 637 N.E.2d 903 (1994) ("a defendant's waiver of his or her right to a speedy trial must be either written or made on the record in open court.")

.

In short, on November 29, 2016 (within the IAD's speedy trial time), Pelfrey agreed to a continuance of the IAD's time limitation and to a trial date of March 6, 2017. Although Pelfrey revoked his time waiver in December 2016, the trial court was not required to try him before March 6, 2017, and its decision to move the trial date to

January 30, 2016 in light of the waiver revocation and defense counsel's needs was reasonable. *See State v. Westerfield,* 3d Dist. Crawford Nos. 3-17-15, 3-17-16, 2018-Ohio-2139, ¶ 21.

Pelfrey's application for reopening is DENIED.

*Pelfrey*, No. 27474 (2nd Dist. Sep. 19, 2018) (*Pelfrey* (2nd Dist. Sept. 19, 2018), State Court Record, ECF No. 7, Ex. 40, PageID 726-30.)

In other words, the Second District concluded that it could have been ineffective assistance of appellate counsel to fail to raise an IAD assignment of error on direct appeal only if there was an IAD violation. Because the trial was timely under the IAD, it was not ineffective assistance of appellate counsel to fail to raise the claim.

Pelfrey argues this decision by the Second District was objectively unreasonable because what occurred on November 29, 2016, was not an IAD waiver in open court, but merely a "verbal acknowledgement of a document he signed that 'did not include the IAD.'" Pelfrey also argues the Second District's construction "completely undermines O[hio] R[evised] C[ode] § 2945.71(F)." (Reply, ECF No. 11, PageID 1335, citing Final Pretrial Trans., ECF No. 7-2, PageID 807-13).

This habeas corpus court is bound by state court determinations of state law questions. *Bradshaw v. Richey*, 546 U.S. 74 (2005). Furthermore, the Second District's construction of Pelfrey's conduct on November 29, 2016, as constituting a waiver under the IAD is a reasonable determination of the facts, based on the evidence in the state courts.

Respondent asserts this IAD speedy trial claim is procedurally defaulted because it was not presented on direct appeal. Pelfrey admits that is the case, but claims the Second District did not enforce that default against him. However, the Magistrate Judge finds it did so by treating the IAD claim only as a claim of ineffective assistance of appellate counsel. In other words, to have waived

the default and reached the merits, the Second District would have had to grant relief on the 26(B) application. Its holding was that there was no ineffective assistance of appellate counsel because there was no IAD assignment of error that would probably have resulted in a different outcome decides the underlying issue of the IAD violation.

Pelfrey again makes his miscarriage of justice argument (Reply, ECF No. 11, PageID 1337), but presents no new evidence of actual innocence. Most importantly, Pelfrey does nothing to respond to the Warden's argument that an IAD speedy trial claim is not cognizable in a habeas corpus proceeding under 28 U.S.C. § 2254. The Supreme Court has held "habeas review is available to check violations of federal laws [including the IAD] when the error qualifies as a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." *Reed v. Farley*, 512 U.S. 339, 348 (1994) (internal quotation marks omitted), *quoting Hill v. United States*, 368 U.S. 424, 428 (1962); accord *United States v. Timmreck*, 441 U.S. 780, 783 (1979); *Davis v. United States*, 417 U.S. 333, 346 (1974). There was no fundamental miscarriage of justice speedy trial violation in this case. Pelfrey was actually tried in January 2017, within six months of his arraignment on the first charges against him and within a much shorter period of time as to the two tampering with evidence charges. As a constitutional matter, a presumption of lack of speedy trial only arises after a year of post-accusation delay. *Doggett v. United States*, 505 U.S. 647 (1992); *Barker v. Wingo,* 407 U.S. 514, 530-32 (1972) . Ground Four should be dismissed.


**Conclusion**


Throughout his lengthy Reply, Petitioner repeatedly proclaims his innocence. The

Supreme Court has noted that "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). In this case, a jury of his peers concluded that Pelfrey participated in a scheme that deprived his elderly grandmother of her home of many years and then involved others in creating false evidence in an attempt to avoid responsibility. That does not strike this Court as a display of actual innocence.

It is respectfully recommended that the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.


June 28, 2019.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS


Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party=s objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).